NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251171-U

NO. 4-25-1171

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 6, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| RAHMEIR REEVES, | ) | No. 19CF254 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed and remanded for further proceedings, finding that defendant was not seized by a police officer when the officer parked his squad car behind defendant's vehicle in a way that did not interfere with defendant's exit and displayed no other coercive behavior that would have indicated that defendant was not permitted to terminate the encounter.

¶ 2    Defendant, Rahmeir Reeves, was charged with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2018)). He filed a pretrial motion to suppress evidence, arguing that the evidence was obtained pursuant to an unlawful seizure. The trial court granted the motion, and the State appealed.

¶ 3    We reverse and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    On November 14, 2019, defendant was charged by information with aggravated criminal sexual abuse (*id.*) for committing an act of sexual penetration with L.S., a person over the

age of 13 but under the age of 17, in that defendant was at least five years older than L.S. and allegedly placed his penis in her vagina.

¶ 6 Defendant was also charged in federal court with production of child pornography (18 U.S.C. § 2251(a) (2018)), possession of child pornography (*id.* § 2252A(a)(5)(B)), and traveling for the purpose of sex with a minor (*id.* § 2423(b)). All of these charges were based on information that was obtained during the same encounter with L.S. that gave rise to defendant's state charge. See *United States v. Reeves*, No. 21-CR-50027, 2025 WL 71834, at *1 (N.D. Ill. Jan. 10, 2025). Defendant filed a motion to suppress evidence in the federal case, which was granted. *Id.* at 11.

¶ 7 On April 7, 2025, defendant filed a motion to suppress evidence in his state case, arguing that the evidence was obtained as the result of an unlawful seizure. He alleged that on the night he was arrested, his vehicle was "blocked in and detained" by Officer Matthew Anderson, who later transported him to the police station for questioning. Based on statements defendant made during questioning, his phone was seized and was later searched pursuant to a warrant. This search revealed alleged child pornography. Defendant argued that Anderson had detained him without legal justification when he parked his squad car in a way that blocked defendant's vehicle and shone a spotlight and flashlight onto the car. Defendant's motion also stated that the "exact case and motion" had already been litigated in the United States District Court for the Northern District of Illinois and had been granted. He asserted:

> "Given that a Federal District Court Judge applied the Fourth Amendment [(U.S. Const., amend. IV)] protections to this exact case and ultimately suppressed not only the illegal stop and its content, but also all fruits of the subsequent investigation, it would stand that [the trial court] is mandated to follow suit."

- 2 -

¶ 8        A hearing was held on defendant's motion on July 2, 2025. Officer Anderson testified that, on October 12, 2019, at around 1 a.m., he observed a vehicle parked on Fairway Drive, a dead-end road that ran from east to west. At the end of Fairway Drive, there was a short bump-out of pavement, or an "apron," which Anderson described as "the beginnings of a second street." The vehicle was parked on this apron, facing north, out toward an unpaved field. The photo below, entered as State's exhibit No. 5, depicts the relevant section of Fairway Drive and the State's approximation of the locations of defendant's vehicle (the clear rectangle in the center of the image) and Anderson's vehicle (the white, red, and blue rectangle to the right of defendant's car).



¶ 9        Due to the late hour, the secluded area in which the car was parked, and the car's out-of-state plates, Anderson's suspicions were raised. He parked his squad car and approached the vehicle. He stated that he did not park his car directly behind the vehicle on the apron itself. Rather, he parked approximately one and a half cars' lengths away, behind the vehicle and to the

side, on the curb of Fairway Drive. He was parked at an angle to the vehicle, and his car's headlights partially illuminated it. He also angled his squad car's spotlight toward the car's rear window. As he approached the car, he used his flashlight.

¶ 10　　　　Anderson stated that when he was a few feet away from the vehicle, the rear driver's side door cracked open. He grabbed the door and opened it fully and saw defendant and L.S. in the back seat of the vehicle. They both were naked from the waist down.

¶ 11　　　　A recording from Anderson's body-worn camera was admitted into evidence. In the recording, Anderson is seen parking his squad car and walking toward the vehicle parked on the apron. After the door of the vehicle opens, Anderson greets the occupants and asks if they have identification with them and to whom the vehicle belongs. Defendant answers, "Mine. Just came from Jersey." Anderson replies, "Ok. Do you want to get your clothes on?" Defendant and L.S. get dressed, while Anderson keeps his flashlight fixed on the car's interior. At one point, defendant tells Anderson, "My shoes are up there," indicating the front seat. Anderson replies, "That's fine, yep, come out." Defendant exits the car and retrieves his shoes from the front seat while Anderson states, "You said you do or don't have an [identification card (ID)]?" Defendant hands his ID to Anderson and tells him that the car is a rental car. He states that he is on vacation from New Jersey, visiting "[his] girl," indicating L.S. Anderson and defendant both laugh. Anderson asks L.S. for ID, and she states that she does not have it with her. Anderson directs her to come to where he and defendant are standing once she finishes getting dressed.

¶ 12　　　　Anderson radios in defendant's information. L.S. walks over, and Anderson asks for her first and last name, which she provides. When Anderson asks for her birthday, she gives him a date that would make her 19 years old. Verbally, she states that she is 18. She also provides Anderson her address when he asks.

¶ 13        Anderson receives information through his radio and addresses defendant, asking, "Your license is suspended, are you aware of that?" Defendant confirms that his license was suspended because he had unpaid charges on various tickets. At this point, a second officer can be heard announcing himself as he approaches. Anderson asks how defendant and L.S. met since they are from different states. They tell him that they met online and were "Facebook friends." Anderson chuckles and says, "All right." He returns to his squad car and attempts to run L.S.'s information through his system, but nothing comes back. While testifying, Anderson confirmed that this would happen if the information provided to him was false or wrongly entered.

¶ 14        The body camera recording then shows Anderson exiting his car and telling defendant that he wants to talk to him. Anderson asks defendant to show him how he and L.S. met and allows defendant to retrieve his phone from his car. Defendant states that he has "been with" L.S. for approximately a year and a half, although this is the first time they have met in person. Anderson asks how old L.S. is, and defendant replies, "She's 16." He states that he is 25. He also tells Anderson that L.S.'s parents are aware of their relationship but do not know that she is currently out of the house with him. Anderson asks, "Do they know their 16-year-old daughter is having sex with a 25-year-old?" and defendant replies, "No." Anderson states, "You see how that could be a problem for you?" Defendant states, "Yeah, I understand that." Defendant confirms that he knew L.S. was 16 when he drove to Illinois to see her.

¶ 15        Anderson testified that he eventually transported defendant back to the police station. While interviewing defendant, he got the passcode to unlock defendant's phone. He stated that he did not search the phone at that time and that a search was done later through a warrant.

¶ 16        Anderson confirmed that, throughout his interaction with defendant and L.S, he never asked if they needed help or if there was anything wrong with the vehicle. He also confirmed

that he did not activate his red and blue squad car lights when he approached them.

¶ 17    When asked if defendant's car could have left the scene with Anderson's vehicle parked where it was, Anderson stated, "The location that my squad car is parked in right now during this incident, without needing to move my squad car, ***the car would be able to reverse towards the west and onto Fairway and then drive eastbound on Fairway." When asked if a car exiting Fairway Drive would have to "drive around" his car, Anderson answered, "It would have to pass it, yes." When asked, "If this car backed straight up, never turned its wheel, would it hit your squad car?" Anderson replied that it would not. He stated that it was not his intent to block in the vehicle.

¶ 18    Defense counsel questioned Anderson on the possibility of defendant's car backing up so that it would be positioned in front of Anderson's car, facing west toward the dead-end of the street. Counsel asked if defendant's car would be "capable of doing that, other than jumping the curb and traveling on the grass?" When Anderson expressed confusion at the question, counsel asked if a car could fit between Anderson's car and the curb on Fairway Drive where he was parked. Anderson said that it could not and elaborated that "to leave Fairway, you can only go east because it's a dead-end street. So if it wasn't a dead-end street, then I suppose a car would want to back up to the east and go west, but it's a dead end."

¶ 19    The State introduced still frames taken from Anderson's body camera showing the distance between his car and defendant's. The State also presented State's exhibit No. 5, as shown above. Anderson confirmed that this diagram accurately reflected the location of the vehicles.

¶ 20    At a hearing on October 30, 2025, the trial court announced its ruling on defendant's motion. The court stated as follows:

"The Court having considered the evidence in this case and the factual basis,

- 6 -

wherein [defendant] was legally parked, he was with another individual. From the outside, there was no observation of any illegal activity. He was parked on a public street. And when the police pulled up, police exited the vehicle. They shined a light in the vehicle.

In the eyes of the Court, it could have stopped with, ['I]s everyone all right here?['] Again, there was no illegal activity that was in any way being investigated, other than a car parked legally on the street. That investigation turned into much deeper. It was about a 20-minute conversation before additional officers came in and more information was obtained.

The Court is going to grant the defense motion."

¶ 21    On October 31, 2025, the State filed a certificate of impairment, certifying that the trial court's ruling had substantially impaired its ability to prosecute the matter. It then filed a notice of appeal.

¶ 22    This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24                    A. Seizure

¶ 25    The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; accord Ill. Const. art. 1, § 6. The fourth amendment guarantee attaches where a search or seizure takes place. See *People v. Woods*, 2013 IL App (4th) 120372, ¶ 19. However, not every encounter between the police and a private citizen constitutes a "seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Rather, police-citizen encounters are divided into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative

detentions, which must be supported by a reasonable articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate the constitutional concerns regarding seizures. *Id.*

¶ 26 A person is "seized" only when an officer, " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). "More specifically, the relevant inquiry to determine whether an individual seated in a parked vehicle has been seized is whether a reasonable person in the defendant's position would have believed that he was free to decline the officer's requests or otherwise terminate the encounter." *People v. Gomez*, 2018 IL App (1st) 150605, ¶ 20. Relevant factors to consider when determining if a seizure has occurred are (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) "some physical touching" of the citizen, or (4) the use of language or tone to convey that compliance with the officer's requests is compelled. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). These factors, while not conclusive, are "highly instructive." *Luedemann*, 222 Ill. 2d at 554. Where these factors are absent, courts are more likely to find a seizure has not occurred. *Id.*

¶ 27 When reviewing a trial court's ruling on a motion to suppress, we utilize a two-part standard of review. *Woods*, 2013 IL App (4th) 120372, ¶ 20. We will reject the trial court's factual determinations only if they are against the manifest weight of the evidence. *Id.* However, we will conduct a *de novo* review of the trial court's ultimate ruling as to whether suppression was warranted. *Id.* In other words, we are free to engage in our own assessment of the facts in relation to the issues presented and draw our own conclusions. *People v. Gherna*, 203 Ill. 2d 165, 175-76 (2003).

¶ 28 The State argues that the trial court erred in granting defendant's motion to suppress

evidence. It asserts that the interaction between Anderson and defendant was consensual due to a lack of any coercive behavior on the part of Anderson. Defendant, in turn, argues that Anderson effectuated a seizure on him by parking his squad car in a way to box in defendant's vehicle and "shin[ing] a spotlight and flashlight on the car and its occupants." He asserts that, under these circumstances, a reasonable person would not have felt free to decline Anderson's requests or to terminate the encounter.

¶ 29      To begin, we find it necessary to specify the time frame that is at issue in this case. The contested encounter on appeal occurred from the time Officer Anderson parked his car to the time he learned that defendant driver's license was suspended, at which point he had probable cause to effectuate an arrest. See *People v. Jones*, 2022 IL App (4th) 220154-U, ¶ 16 (finding that an officer had probable cause to arrest the defendant when he observed the defendant driving and knew the defendant's license to be suspended). Defendant argues that the period before Officer Anderson learned of the suspension constituted an unlawful seizure. The State argues that this encounter was consensual and did not implicate the fourth amendment.

¶ 30      We agree with the State and find that no seizure occurred in this time frame. First, we note that police officers are allowed to approach and question a person seated in a parked car without that encounter being labeled a seizure. *Luedemann*, 222 Ill. 2d at 552. Indeed, they are specifically allowed to ask for identification and ask potentially incriminating questions. See *Bostick*, 501 U.S. at 439. To the extent the trial court implied that police officers cannot approach a vehicle to ask questions without observing some illegal activity, it was incorrect.

¶ 31      Further, none of the *Mendenhall* factors that would indicate a seizure occurred are present here. Officer Anderson never made any physical contact with defendant, he did not brandish a weapon, he spoke in a casual and friendly manner to defendant and L.S. (we note that

prior to learning L.S.'s true age, Anderson laughed with defendant about the circumstances), and there was only one officer on the scene, as opposed to multiple officers surrounding defendant's car. Additionally, Anderson never turned on his car's red and blue flashing lights, which could have communicated he was acting in an authoritative capacity. The absence of all these factors tends to show that the encounter constituted no more than a consensual conversation. See *Luedemann*, 222 Ill. 2d at 554 (finding that the absence of any of the factors listed by the court in *Mendenhall* indicated that no seizure had occurred).

¶ 32    Additionally, we find that Anderson did not box in defendant's car when he pulled up behind and to the side of him. The trial court did not explicitly state any findings on this point, but a conclusion that Anderson blocked defendant's vehicle would be against the manifest weight of the evidence. It is largely uncontroverted that defendant would have been able to leave the scene if he had wanted to. Anderson testified that if defendant had driven his car straight backwards, he would not have hit his squad car. He also testified that defendant was able to back out of the apron at an angle that would allow him to exit the dead-end road to the east without any impediment. The still images and recordings taken from Anderson's body camera seem to support this, as they show a distance between defendant's car and Anderson's squad car that would allow for an unimpeded exit by defendant.

¶ 33    Even if a vehicle need not be entirely blocked in order to be partially restrained, it is doubtful that Anderson's car impeded defendant's exit at all. In our view, the only scenario in which defendant's exit would have possibly been affected by Anderson's squad car would be if defendant had backed out of the apron and toward Sumac Drive, so that he was facing west down the dead-end road. This would clearly be a counterintuitive course of action for a person attempting to leave. The simpler method would have been to back out of the apron toward the dead-end and

proceed east past Anderson's squad car, down Fairway Drive away from the dead-end. We reject the idea that because Anderson's car could possibly have impacted the ease with which defendant might have taken an impractical path out of the dead-end, he was effectively "boxed in."

¶ 34　　　　Defendant also argues that Anderson used a flashlight when approaching defendant's vehicle, shone his squad car's spotlight on the vehicle, and shone his headlights partly on the vehicle. He claims this behavior, coupled with other factors, "amounted to a seizure because a reasonable person in [defendant's] position would not have felt free to terminate the encounter." However, as defendant readily acknowledges, the use of flashlights and headlights is not inherently coercive or a show of authority. See *id.* at 561-62. It must be accompanied by something more, such as blocking a car in its parking space. *Id.* Here, because we find that Anderson's car did not block defendant's exit, we conclude that there was no necessary extra factor to make the simple use of a flashlight and headlights on a dark road at night a coercive show of authority. See *People v. Jordan*, 2019 IL App (4th) 190223, ¶ 45 (finding the use of flashlights and a spotlight to illuminate a parked car at night did not constitute a seizure absent any other coercive behavior).

¶ 35　　　　We also acknowledge that defendant's statements to Anderson suggested that he felt, at the very least, that Anderson was exerting some authority over him. Specifically, defendant asked Anderson for permission to exit the car and retrieve his shoes from the front seat. However, the question is whether a *reasonable* person would have believed he was free to terminate the encounter with the officer. *Luedemann*, 222 Ill. 2d at 551. It "does not hinge upon the subjective perception of the person involved." *Id.* Where defendant was not physically prevented from leaving, and where Officer Anderson did not demonstrate any other coercive behavior and instead engaged in a polite and informal conversation, we find that a reasonable person would not have believed himself unable to terminate the encounter.

¶ 36    We find this case nearly identical factually to *Luedemann*. There, the defendant was charged with driving under the influence of alcohol. *Id.* at 532. At the time of his arrest, an officer on patrol observed him sitting in the driver's seat of a parked car. *Id.* at 533. The officer decided to question the defendant after he observed him "reach toward the floorboard on the passenger side of the car" and "slump[ ] down approximately six to eight inches in his seat" when the officer drove past. *Id.* at 54. The officer parked his car behind the defendant's, in the center of the street, facing the opposite direction from the defendant's car. *Id.* As the officer approached the defendant's vehicle, he saw an uncapped brown glass bottle on the floor in front of the passenger seat. *Id.* While speaking to the defendant, he noticed that the defendant's speech was slurred and his eyes were bloodshot and glassy. *Id.* at 534-35. At this point, the officer moved his car to park directly behind the defendant, and other officers arrived on the scene. *Id.* at 535. The defendant failed multiple sobriety tests and admitted he had been drinking. *Id.* He was subsequently placed under arrest. *Id.*

¶ 37    The defendant moved to quash his arrest and suppress evidence, arguing that the officer who approached his vehicle had neither probable cause for an arrest nor a reasonable suspicion of criminal activity sufficient to justify a detainment. *Id.* at 532. The motion was granted by the trial court and affirmed by the appellate court, which found that the defendant was seized prior to the officer observing an open bottle in his vehicle. *Id.* at 535-38.

¶ 38    The supreme court, however, reversed. *Id.* at 566. It first noted that a seizure does not occur merely because an officer approaches an individual and asks questions. *Id.* at 552. It then pointed to the following factors as indicating that no seizure had taken place: the officer did not pull his car in behind the defendant's until he observed signs of intoxication, turn on his overhead red and blue lights, speak in a coercive tone or use coercive language (the court's factual recitation

stated only that the officer asked the defendant what he was doing in the area and asked for identification), touch the defendant, or display a weapon. *Id.* at 565. The court noted that the officer had approached the defendant's car using a flashlight but the use of a flashlight or a spotlight does not constitute a seizure unless accompanied by "other coercive behavior." *Id.* at 561. Because the court found no coercive factors were present, it found that the defendant was not seized. *Id.* at 566. It therefore reversed the judgments of the trial court and appellate court. *Id.*

¶ 39     Similar to the officer in *Luedemann*, Officer Anderson did not engage in any inherently coercive behaviors. He did not yell at defendant or demand compliance, display a weapon, or turn on his squad car's flashing red and blue lights, and he was the only officer on the scene. Furthermore, he did not park his car so as to seriously impede defendant's exit. To the extent the trial court found otherwise, its conclusions were against the manifest weight of the evidence. Indeed, we note that the trial court seemed to base its conclusion that defendant was seized on three factors: (1) Anderson observed no illegal activity prior to approaching the car, (2) he shined a light in the vehicle, and (3) his questions did not "stop[ ] with, is everyone all right here?" All of these bases are incorrect because, as we have discussed, officers may approach a car to ask questions, even using a flashlight, without effectuating a seizure.

¶ 40     Because the contested encounter between defendant and Officer Anderson did not constitute a seizure, the trial court erred in granting defendant's motion to suppress.

¶ 41                    B. Defendant's Federal Case

¶ 42     Defendant devotes a significant portion of his brief to discussing the decision of the district court in his federal case. See *Reeves*, 2025 WL 71834. As stated, defendant was charged in the Northern District of Illinois with production and possession of child pornography and traveling for the purpose of sex with a minor, all based on the same facts that comprise his state

charge of aggravated criminal sexual abuse. See *id.* at *1-2. He moved to suppress evidence in the federal case, and the district court granted the motion, finding an unlawful seizure had occurred. *Id.* at *7. In its analysis of the positioning of Officer Anderson's car relative to defendant's, the court stated, "Ultimately the Government doesn't dispute that the position of Officer Anderson's car prevented [defendant] from leaving, even though [defendant] preemptively raised this argument in his opening brief." *Id.* at *4. Considering that Anderson blocked defendant's car and used flashlights and a spotlight, and considering that the encounter occurred on a dead-end road with no one else around, the court found the encounter constituted a seizure and granted defendant's motion to suppress. *Id.* at *5, 11.

¶ 43      The State filed a motion to reconsider. See *United States v. Reeves*, No. 21-CR-50027, 2025 WL 1017571, at *1 (N.D. Ill. April 4, 2025). In ruling on this motion, the district court again noted that the State had not specifically argued that defendant was not blocked in by Anderson's car. See *id.* at *3. Regardless, the court found that, even if this argument had not been waived by the State, there was no error in the court's conclusion that defendant's car was blocked by Anderson. *Id.* at *5. The court noted that it had considered recordings from officers' body-worn cameras and aerial images of Fairway Drive in reaching its determination, all of which supported its conclusion. *Id.* In particular, it found the State-created diagrams of the cars to be unreliable representations of the encounter because the State "didn't explain how it created, sized, or placed the pictographic shapes representing the cars and they [did not] appear accurate." *Id.* The court agreed that it would not have been physically impossible for defendant to leave, but the evidence did not clearly show that [defendant] could have exited the same way regardless of Officer Anderson's car." *Id.*

¶ 44      To begin, we note that we are not reviewing the decision of the district court, but

of the state trial court. We further note that we are not bound by the district court's decision. *Montes v. Taylor*, 2013 IL App (4th) 120082, ¶ 21.

¶ 45   While federal district court decisions may provide persuasive authority in some situations, we do not find that to be the case here. Significantly, different evidence was presented in defendant's federal case than what was presented in the state court. The district court did not hear testimony from Officer Anderson. See *Reeves*, 2025 WL 71834, at *1. Specifically, it did not hear Anderson testify that defendant's exit path was unimpeded by the location of his squad car, defendant would have been able to back up in a straight line without running into Anderson's squad car, and the diagram presented by the State showing the location of the respective vehicles was an accurate depiction. The district court had only the evidence in the record before it to inform its decision and, from this evidence, it concluded that defendant "would have to maneuver around Officer Anderson's car to back out of the driveway apron and leave." *Id.* at *4. It repeated this conclusion when it denied the State's motion to reconsider, stating, "[T]he cars appear close enough that [defendant] would have had to do a more severe three-point turn to avoid Officer Anderson's car." *Reeves*, 2025 WL 101751, at *5. Because the district court's conclusion was based on different information than that of the state court, it has less persuasive value for the record before us.

¶ 46   After reviewing all of the evidence before us, we respectfully disagree with the rulings of the district court and the trial court. We find that Officer Anderson did not park his car in a way that would have significantly interfered with defendant's exit and did not make any other inherent shows of authority that would signal to defendant that he was required to submit to him. Accordingly, we find that there was no seizure from the time that Anderson parked behind defendant to the time he learned that defendant's license was suspended. Thus, the trial court erred

in granting defendant's motion to suppress.

¶ 47                                    III. CONCLUSION

¶ 48          For the reasons stated, we reverse the trial court's judgment and remand for further

proceedings.

¶ 49          Reversed and remanded.